## Himmelberger Appeal

*T. A. Ehrgood,* for appellants.

*Thomas J. Shannon,* Assistant Attorney General, for Commonwealth.

GATES, P. J., January 10, 1967.—It has been said with considerable persuasion that the law is a profession of words. Fascination lies in the realization that legal principles long considered by our appellate courts as clear and settled when applied to a novel set of facts and circumstances suddenly become unclear and unsettled. Courts are ofttimes run up the wrong fork of the road to reason by trying to apply broad language by appellate courts in interpreting a case in a different

setting. Such is the case before us. It all came about this way.

Following an investigation by its agents, the Pennsylvania Liquor Control Board issued a citation to these licensees to appear for a hearing on December 16, 1965, in Harrisburg, on charges of permitting minors to frequent the licensed premises and for selling alcoholic beverages to minors on or about June 10, 1965, and on divers other occasions within the year past.

A hearing was conducted before an examiner, at which licensee appeared with counsel, crossexamined the informing minor, introduced evidence and testified himself.

Following the hearing, the board filed its opinion, finding as a fact that licensee did permit minors to frequent the licensed premises and did sell alcoholic beverages to minors on June 10, 1965. The board concluded that this constituted a violation of the laws of the Commonwealth and, therefore, ordered a 20-day suspension of the license. The order was dated February 11, 1966.

From this order, licensee appealed, and the matter was heard before us on April 15, 1966. At that time, the minor took the witness stand but, upon advice of counsel, refused to respond to any questions on the ground that his testimony would incriminate him. Since this was the only witness for the Commonwealth, the Commonwealth moved to have his recorded testimony taken at the hearing before the examiner admitted into evidence. Licensee objected, but we admitted the record into evidence, subject to the objection.

Now, what do we do? The Commonwealth in its brief sends us down the pathway to reason with this provocative statement: "The primary basis for this decision is the commonly accepted practice of Quarter Sessions Courts throughout this state to admit the re-

cord of the Pennsylvania Liquor Control Board hearing as a whole and decide the matter by reviewing the record. The court must also admit that this is an unusual way to hear a matter de novo; also, as stated in Manns Liquor License Case, 207 Pa. Superior Ct. 340 (1965), at page 342: 'The law is well settled that hearings de novo, so designated by the legislature, are, so far as the Liquor Code is concerned, in fact, not de novo and unless new facts can be found by the court . . .' "

Laying aside for the moment the commonly accepted practice of quarter sessions courts in this State, we direct our attention to the observation that the hearing before us in this case is not de novo. The court in Manns Case cites as authority the case of Club Oasis, Inc. Liquor License Case, 200 Pa. Superior Ct. 439, and the authorities noted therein in footnote 3 on page 445. An examination of the cases footnoted reveals that 10 of them support the proposition stated in Club Oasis, that the only question before the quarter sessions court is a determination of whether the board abused its discretion. All but one of the footnoted cases, however, as well as Club Oasis itself and the Manns case, were appeals from the action of the board in denying an application or refusing to approve a transfer of a license. Only the footnoted case of East End Ex-Service Men's Association Liquor License Case, 162 Pa. Superior Ct. 512, involved an appeal from a suspension or revocation, and, we submit, is not an authority for the stated proposition.

We are of the opinion that the Commonwealth was led down the wrong avenue by its broad interpretation of the Superior Court's language in the Manns case as meaning "all appeals" under the Liquor Code. We believe that there is a distinction to be made in matters appealed to the quarter sessions court concerning issuing licenses or transferring them and cases in-

volving revocations or suspensions. The reason for the distinction rests in an observation made by the Superior Court in the Manns case at page 342, as follows:

"At one time the Board did not have the discretion to deny transfers on the ground that such transfer threatened the quiet character of the neighborhood. . . . But the legislature amended Section 404 of the Liquor Code (47 PS 4-404), by the Act of August 25, 1959, P. L. 746, and the language of the amendment must be closely scrutinized: '. . . And provided further, That the board shall refuse any application for a new license or the transfer of any license to a new location if, *in the board's opinion,* such new license or transfer would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed. . . .'

"So, the question before this Court is whether or not the Board is chargeable with an abuse of administrative discretion, or opinion, as the Act puts it. . . ." (Italics supplied.)

Consequently, it would appear to be settled that in appeals under section 464 of the Liquor Code of April 12, 1951, P. L. 90, dealing with transfers, the duty of the court of quarter sessions on appeal is limited to a determination of whether or not the board abused its discretion or opinion. It then logically follows that there need be no hearing de novo before the court of quarter sessions, unless there are new facts. Nonetheless, we are of the opinion that the court of quarter sessions is not so limited in matters of appeals under section 471 in the matter of suspension or revocation. A review of the Liquor Code and its various amendments, commencing with the Act of June 16, 1937, P. L. 1762, and continuing through amendatory Acts of May 27, 1943, P. L. 688, May 20, 1949, P. L. 1551, and the Act of 1951, supra, discloses that a distinction was

made in the two types of appeals. Section 404 dealt with licenses, renewals, and transfers, while section 410 dealt with revocations and suspensions. In 1951, the Liquor Code was completely revised, and new section numbers were assigned so that presently the distinction is preserved in section 464, which deals with refusals of licenses, renewals or transfers, and section 471, which deals with suspensions and revocations.

The reason for the nice perception was expressed by Judge Hirt, speaking in Commonwealth v. Hildebrand, 139 Pa. Superior Ct. 304, at page 307, where he observes: "This conclusion is further strengthened by the fact that a licensee on entering into a lease of premises and in furnishing it with appropriate equipment, may have a large financial investment at stake, and it is only reasonable to assume that the legislature for that reason intentionally omitted from section 410 the restriction upon further appeal contained in section 404. The refusal of a license in the first instance is not so important to the person affected".

We perceive still other reasons for treating the appeals differently. In the matter of issuing licenses, renewing them or transferring them, it is obvious that the legislature deemed the activity an administrative one, seated in geographical, political and moral concepts. On the other hand, in matters of the suspension or revocation of existing licenses, based as it is on charges that licensee violated the penal provisions of the code or is guilty of violations of the criminal code, the activity is judicial in nature, and the quarter sessions court is the appropriate forum to hear and determine matters of this nature on appeal.

We must also come to grips with the Commonwealth's contention here that there is no analogy to be drawn in appeals under the Liquor Code and appeals from suspensions under The Vehicle Code. The Commonwealth indeed has support for this contention laid

in Haddington Italian American Club License, 11 D. & C. 2d 688, at 703, where the court comes to that conclusion based upon President Judge Rhodes' statement in Booker Hotel Corporation Liquor License Case, 175 Pa. Superior Ct. 89, to the effect that the motor vehicle decisions cited at page 93 to the effect that appeals from the action of the Secretary of Revenue in suspending a motorist's operating privileges are to be heard de novo, and the court, in exercising its discretion, determines anew whether the license should be suspended, are inapplicable to the case. Again, however, the Booker case was not an appeal under section 471, but an appeal under section 464, for the case involved the refusal of the board to transfer a hotel liquor license, and it was not a suspension case at all. Judge Crumlish in the Haddington case has led the Commonwealth in this case down the same wrong highway by leaning on Booker and the case of Hotchkiss Liquor License Case, 169 Pa. Superior Ct. 506, as authority for the stated propositions. Neither Booker nor Hotchkiss was an appeal under section 471.

We are of the opinion that there is an analogy in the role of the court of quarter sessions in appeals under section 471 of the Liquor Code and appeals from suspension under The Vehicle Code, with, however, one limitation. Under The Vehicle Code, the court on appeal in the exercise of its discretion may only sustain or reverse the action of the Secretary of Revenue: Rabin Motor Vehicle Operator License Case, 196 Pa. Superior Ct. 555; Anen Motor Vehicle Operator License Case, 194 Pa. Superior Ct. 379. Under the Liquor Code, the court in the exercise of its discretion may sustain, reject, alter, or modify the findings, conclusions, and penalties of the board based on the findings of facts and conclusions of law as found by the court so appealed to: see section 471. The only limitation on this grant of broad discretion to the quarter

sessions court is that the court may not modify or reduce the penalty imposed by the board unless the court finds different facts: Legion Home Association of Monessen Appeal, 195 Pa. Superior Ct. 643. It is in the language of Judge Flood in this case that we find the most comfort for our present determination. At page 645, he says: "The fact that the hearing is *de novo* deprives the findings of the board of any presumption in their favor. The result of this is that before the Quarter Sessions Court, the burden is on the board to prove the allegations of the citation. The licensee does not have the burden of disproving the findings of the board". (Italics supplied.) See also Mami's Liquor License Case, 144 Pa. Superior Ct. 285, at 291.

Therefore, it is our considered opinion that, on appeal from a suspension or revocation of a license under section 471 of the Liquor Code, it is our duty to hear the evidence de novo and exercise our discretion to sustain, reject, alter, or modify the findings, conclusions, and penalties of the board based on the findings of fact and conclusions of law determined by us, subject only to the limitation that we may not alter, reject, modify, or reduce the penalty imposed by the board unless our findings are different from those made by the board.

At this point, we will examine briefly the Commonwealth's contention that it is the commonly accepted practice of quarter sessions courts throughout this State to admit the record as a whole of the Pennsylvania Liquor Control Board hearings and decide the matter by reviewing the record. In order that language may not cause us more difficulty, we would like at this point to recognize a distinction between the findings of fact made by the board and the testimony taken before the board's examiner. We readily agree that the findings of fact made by the board must be a

part of the record of the proceedings before us, inasmuch as we are limited in the exercise of our discretion, if we find the same facts as did the board. This is, however, a far cry from the contention that the whole record, including the testimony before the examiner, is commonly admitted by the quarter sessions court and the case decided by reviewing the record, as the Commonwealth contends. In all of the appellate court cases examined by us, it is clear that there was, in fact, a hearing and testimony taken by the court of quarter sessions with the exception of a few cases where the testimony adduced before the examiner for the board was, by agreement of counsel, made part of the record on appeal to the quarter sessions court. See Lehigh Valley Brewery Workers Home Association Liquor License Case, 154 Pa. Superior Ct. 141; Yatsko's Liquor License Case, 149 Pa. Superior Ct. 97. This, however, is not tantamount to the establishment of a custom. On the contrary, it has never been the custom in this county, although it has been done by stipulation of the parties: Carpenter License, 41 D. & C. 2d 24. It apparently is not the custom in neighboring Lancaster County. See Walker Appeal, 59 Lanc. 103; Centini's License Appeal, 59 Lanc. 105; Kochel's License Appeal, 59 Lanc. 107; Rothfus' License Appeal, 59 Lanc. 109. See also Appeal of Coach & Lantern, Inc., 22 Lawrence 236; In re: Revocation of License of Ostroski, 43 Luz. 123; Commonwealth v. Panella, 23 Somerset 274.

Now comes the meat of the matter before us. There was no testimony presented to us at the hearing other than the offer of the testimony taken before the board's examiner to which licensee objected. Can we consider this testimony under the circumstances as satisfying the burden of proving the allegations of the citation? The Commonwealth contends that we may, because it was testimony given under oath before a tribunal at

which licensee appeared, heard the voluntary testimony of the minor and crossexamined him with regard to it. It is contended that the Act of May 23, 1887, P. L. 158, sec. 9, 28 PS §327, expressly allows the stenographic testimony of the minor to be admitted into evidence. We are of the opinion, however, that it is unnecessary for us to decide whether the statute is applicable to this situation for another, more basic reason. We are of the opinion that the minor could be compelled to testify before us to the same extent that he testified before the board's examiner, for he has waived his constitutional right against self-incrimination. Chief Justice Paxson observed, in Commonwealth v. Doughty, 139 Pa. 383, at 397, in approving the use of the notes of testimony on the former trial of one of the defendants in the case, that: "Their admissions or declarations would be evidence against them to show their share in a conspiracy; and, if so, why not their testimony under oath?" Later, in Commonwealth v. Ensign, 228 Pa. 400, the court observed at page 403 that: "[T]estimony and written statements voluntarily given or made by a party or witness in a judicial proceeding, are as admissions and confessions, competent against him on the trial of any issue in a criminal case to which they are pertinent, . . ."

In Commonwealth v. Cavanaugh, 159 Pa. Superior Ct. 113, it was held that an admission voluntarily made by a witness in a judicial proceeding is competent on a subsequent trial of any issue in a criminal case to which it is pertinent and, by failing in the prior proceeding to exercise the privilege of silence, the privilege is waived. In Commonwealth v. Bartell, 184 Pa. Superior Ct. 528, there were four defendants indicted for conspiracy. One of the defendants, Brady, had previously testified at the trial of the fifth conspirator. In the present trial, this former testimony of Brady was offered by the Commonwealth, and it was read to

the jury. It was argued on appeal that this was a violation of Brady's constitutional right against self-incrimination. The court held, however, at page 544, that: ". . . the giving of testimony by Brady at the prior trial was a waiver of his privilege against self-incrimination, and such testimony was admissible at this trial".

The court continued and observed that: "Although subpoenaed in the prior trial Brady nevertheless could have asserted the privilege if he felt that he was in danger of incriminating himself; not having done so he cannot now assert the privilege".

In the instant case, the minor appeared at a hearing before the board's examiner and, under oath, testified in substance that on or about June 10, 1965, he was 18 years old; that, prior to June 10, 1965, he used to frequent the licensed premises every Friday or Saturday night. He testified further that the last time he was there was June 10, 1965, in the company of another minor, and he purchased a four-pack of Schmidt's beer from Russell Himmelberger, husband-licensee. The minor did not then exercise his privilege to remain silent. He did, in fact, incriminate himself by his testimony. He cannot, in a subsequent proceeding, assert the privilege. If in any subsequent criminal proceeding, the testimony he gave before the examiner under oath could be used against him, a fortiori, why, in a civil proceeding such as this, cannot his testimony be used against licensee, who was present at the time the testimony was taken and who, in fact, crossexamined him with respect to it?

Licensee is unnecessarily solicitous of the minor's constitutional rights. These rights are personal to him and exercisable only by him. The consequences of his failure to exercise these rights are visited on the minor, not licensee. The privilege of silence was never intended to benefit third parties. It is an individual liberty.

Nor can licensee complain of a violation of his constitutional rights of confrontation and crossexamination; opportunity to be heard and represented by counsel; self-incrimination and the like. Both the Fifth and the Sixth Amendments to the United States Constitution and article 1, sec. 9 of the Pennsylvania Constitution are limited in application to criminal cases. This appeal is a civil proceeding: Summit Hill Rod and Gun Club Liquor License Case, 184 Pa. Superior Ct. 584.

Furthermore, this testimony meets the tests of reliability. It was given under oath before a legal tribunal. It was given in the presence of licensee, who not only had the right, but did crossexamine the witness. It is direct evidence of facts and not hearsay.

It seems abundantly clear that we could schedule a rehearing in this matter and compel the minor to testify under penalty of contempt. This, however, seems to be an unnecessary waste of everybody's time, since his recorded testimony, duly certified to be a full, true, and correct copy of the testimony taken before the Liquor Control Board on December 16, 1966, has been offered into evidence and received, subject to licensee's objection. We will, therefore, overrule the objection for the reasons hereinbefore stated and consider this testimony as if presented to us at the hearing de novo.

The only question remaining involves the credibility of the minor witness. Undoubtedly, his testimony would not be sufficient in a criminal case where reasonable doubt is the test or in an equity case where the testimony must be clear and precise. However, in this case, only a preponderance of the evidence must be determined in favor of the citation: Summit Hill Rod and Gun Club Liquor License Case, supra. Considering that licensee neither before the examiner nor before us testified in opposition to the minor's testimony, it is our opinion that licensee did violate the Liquor Code by permitting minors to frequent the licensed premises and by selling alcoholic beverages to a minor on or

about June 10, 1965, as found by the Liquor Control Board.

Therefore, after due and careful consideration, we will make the following

ORDER

And now, to wit, January 10, 1967, the appeal of Russell and Elyda Himmelberger from the suspension of their restaurant liquor license and amusement permit is dismissed, and the action of the Liquor Control Board in suspending said license for a period of 20 days is sustained. New dates for the term of suspension are to be fixed by the board.